UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| CASSAUNDRA M. SMITH, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:06CV55 TLA |
| | ) |
| JO ANNE B. BARNHART, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

BRIEF IN SUPPORT OF ANSWER

Nature of Action and Prior Proceedings

This suit involves two applications made under the Social Security Act (the Act). The first is an application for disability insurance benefits (DIB) under title II of the Act, 42 U.S.C. §§ 401 et seq. (Tr. 104-06). The second is an application for supplemental security income (SSI) benefits based on disability under title XVI of the Act, 42 U.S.C. § 1381 et seq. (Tr. 52-56). Section 205(g) of the Act, 42 U.S.C. § 405(g), provides for judicial review of a "final decision" of the Commissioner of the Social Security Administration under title II. Section 1631(c)(3) of the Act, 42 U.S.C. § 1383(c)(3), provides for judicial review to the same extent as the Commissioner's final determination under section 205.

Plaintiff's applications were denied on June 30, 2004 (Tr. 32-37, 57, 88-92)[1].  On September 22, 2005, an administrative law judge (ALJ) found that Plaintiff was not under a "disability" as defined in the Social Security Act (Tr. 11-21).  On March 29, 2006, after consideration of additional evidence, the Appeals Council of the Social Security Administration denied Plaintiff's request for review (Tr. 5-7, 274-77).  Thus, the ALJ's decision stands as the final decision of the Commissioner.

Statement of Facts

Plaintiff filed her applications for DIB and SSI benefits on February 17, 2004 (Tr. 52-56, 104-06).  She was born in 1970 and alleged that she became disabled on August 2, 2003 (Tr. 52, 104).  In her disability report, Plaintiff alleged that she was disabled due Erb's palsy[2]; muscle spasms in her right arm, wrist, and hand; pain in her arm and neck; and carpal tunnel syndrome (Tr. 167).  Plaintiff was a high school graduate and worked in the past as a childcare provider, convenience store clerk, and bakery cook (Tr. 153, 172).  Defendant adopts the ALJ's discussion of the facts (Tr. 10-17).

Statement of the Issue

The issue is whether the final decision of the Commissioner is supported by substantial evidence on the record as a whole.

---

[1] Missouri is one of several test states participating in modifications to the disability determination procedures which apply in this case.  See 20 C.F.R. §§ 404.906, 404.966 (2006). These modifications include, among other things, the elimination of the reconsideration step in the administrative appeals process.  See id.  Therefore, Plaintiff's appeal in this case proceeded directly from her initial denial to the administrative law judge level.

[2] Erb's palsy, also known and Erb-Duchenne paralysis, is upper arm paralysis caused by nerve damage occurring during birth.  See Dorland's Illustrated Medical Dictionary 1218, 1227 (28th ed. 1994) (Dorland's).

Argument

In order to establish entitlement to disability benefits, Plaintiff must show that she was unable to engage in any substantial gainful activity by reason of a medically determinable impairment which lasted or could be expected to last for not less than 12 months. See 42 U.S.C. §§ 423(d), 1382c(a)(3)(A). The standard of review of the Commissioner's decisions is limited to whether the "decision is supported by substantial evidence on the record as a whole." Gartman v. Apfel, 220 F.3d 918, 921 (8th Cir. 2000). "Substantial evidence is relevant evidence which a reasonable mind would accept as adequate to support the Commissioner's conclusion." Id. The Court may not reverse the Commissioner merely because substantial evidence exists supporting a different outcome. See Black v. Apfel, 143 F.3d 383, 385 (8th Cir. 1998). If, after review, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the Court must affirm the denial of benefits. See Mapes v. Chater, 82 F.3d 259, 262 (8th Cir. 1996).

After careful consideration of the evidence and Plaintiff's testimony, the ALJ determined that Plaintiff had the severe impairments of right shoulder strain, right arm palsy, and bilateral carpal tunnel syndrome status post surgical release (Tr. 19). However, the combined effects of Plaintiff's impairments did not meet or equal an impairment found at 20 C.F.R. Part 404, Subpart P, Appendix 1, the Listing of Impairments (Tr. 19). After considering the evidence, the ALJ found that Plaintiff's subjective complaints were not fully credible (Tr. 19). The ALJ determined that Plaintiff had the residual functional capacity (RFC) to lift up to 10 pounds frequently and 20 pounds occasionally and sit and stand and/or walk for 6 hours each in an 8-hour workday (Tr. 20). However, Plaintiff was only able to use one of her arms for work

activities (Tr. 20). After obtaining testimony from a vocational expert, the ALJ determined that Plaintiff was capable of performing a number of jobs, such as information clerk, usher, security system monitor, and museum attendant that exist in significant numbers in national economy (Tr. 19). Thus, the ALJ found that Plaintiff was not disabled (Tr. 20).

Plaintiff first argues that the ALJ failed to conduct a proper credibility analysis before finding that her subjective complaints were not credible. See Pl.'s Br. at 16-19. Prior to rejecting a claimant's subjective complaints, the ALJ is required to make an express credibility determination explaining why he does not fully credit the claimant's complaints. See Lowe v. Apfel, 226 F.3d 969, 971 (8th Cir. 2000). In this case, the ALJ articulated a number of factors that led him to conclude that Plaintiff's subjective complaints were not fully credible (Tr. 16-18).

Initially, the ALJ noted that Plaintiff's daily activities were inconsistent with her reported subjective symptoms (Tr. 16). Plaintiff took care of her two children who were 5 and 6 years old when she applied for benefits (Tr. 16, 141). She indicated that she dressed her children, prepared their meals, bathed them, and provided for their other needs (Tr. 16, 142, 144). Plaintiff washed laundry and dishes, made the bed, ironed, vacuumed, took out the trash, and ran errands (Tr. 143). However, she did not mow the lawn or rake leaves due to and inability to use her right arm (Tr. 143). Nonetheless, Plaintiff's essentially normal daily activities, as well as her ability to care for her two children, are inconsistent with her reported inability to perform any work activity on an ongoing basis (Tr. 16). "Allegations of pain may be discredited by evidence of daily activities inconsistent with such allegations." Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001)(citing Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987)). See also Eichelberger v. Barnhart, 390 F.3d 584, 590 (8th Cir. 2004) (ALJ can properly consider a claimants ability to be

4

the primary care provider for children). In addition, the ALJ noted that Plaintiff was working part-time as a recess supervisor (Tr. 16, 284-85). See Goff v. Barnhart, 421 F.3d 785, 792 (8th Cir. 2005) ("Working generally demonstrates an ability to perform a substantial gainful activity.").

Plaintiff's treatment history also weighed against her credibility (Tr. 17). The ALJ noted that despite her complaints of right arm pain, Plaintiff did not use any strong pain medication (Tr. 17, 291-92, 297-98). In fact, she repeatedly indicated that she was not using any medication for her impairments (Tr. 17, 113, 171). A lack of strong pain medication is inconsistent with subjective complaints of disabling pain. See Hall v. Chater, 109 F.3d 1255, 1258 (8th Cir. 1997); Ostronski v. Chater, 94 F.3d 413, 419 (8th Cir. 1996)(failure to take prescription pain medication is inconsistent with complaints of disabling pain). Further, Plaintiff did not seek treatment on an ongoing basis for her right arm strain, palsy, or carpal tunnel syndrome (Tr. 17). She underwent successful surgery in 2004 for bilateral carpal tunnel syndrome (Tr. 203, 206-08, 211-12, 253). After recovering from her surgeries, she did not seek any additional treatment for carpal tunnel syndrome during the relevant period. With regard to her right arm impairments, she complained of pain and spasm in October 2003 (Tr. 215, 251). She did not seek treatment again for nine months until she presented to Steven D. Mellies, D.O., on July 29, 2004 (Tr. 253). She received no further treatment until February 8, 2005, when she was sent to Crosstrails Medical Center by her attorney in connection to her disability claim (Tr. 256). As a result, in March 2005 Plaintiff started a two-week course of physical therapy for her right arm and shoulder (Tr. 263-69). Notably, evaluation of her left arm and shoulder revealed normal strength and range of motion (Tr. 263, 265). Plaintiff last sought treatment for her arm on April 26, 2005

5

(Tr. 272). Notably she did not report any left arm, shoulder, or wrist pain during any of these visits. Allegations of disabling pain may be discredited by evidence that the claimant has received minimum medical treatment and/or has taken only occasional pain medications. See Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998).

The ALJ also considered Plaintiff's work history (Tr. 17). Specifically, the ALJ observed that Plaintiff's earnings record showed a history of low earnings (Tr. 18). Despite alleging disability beginning in 2003, Plaintiff had not earned over $5,000 in any year since 1996 (Tr. 17-18, 94). An ALJ may discount a claimant's credibility based upon her poor work record. See Comstock v. Chater, 91 F.3d 1143, 1147 (8th Cir. 1996)(claimant's prior work history characterized by fairly low earnings and significant breaks in employment casts doubt on his credibility).

The ALJ also observed that none of Plaintiff's treating physicians ever imposed any long-term functional restrictions (Tr. 17). None of her treating physicians ever indicated that they believed that she would be unable to perform all work activity (Tr. 17). It is significant that none of Plaintiff's physicians opined that she was disabled from all work. See Brown v. Chater, 87 F.3d 963, 965 (8th Cir. 1996)(lack of significant restrictions imposed by treating physicians supported the ALJ's decision of no disability). Based on all of these factors, the ALJ properly found that Plaintiff's subjective complaints were not credible (Tr. 16-18). When the ALJ articulates the inconsistencies on which he relies in discrediting Plaintiff's subjective complaints, and when those inconsistencies are supported by the record, his credibility finding should be affirmed. See Hogan v. Apfel, 239 F.3d 958, 962 (8th Cir. 2001) ; Hall v. Chater, 109 F.3d 1255, 1258 (8th Cir. 1997).

Plaintiff argues that the ALJ's statement that there were no abnormal findings involving her left arm failed to take into account the evaluation of Jerome F. Levy, M.D. See Pl.'s Br. at 18-19. Initially, the ALJ did not discuss the findings of Dr. Levy because they were not in the record at the time of his decision. Dr. Levy did not examine Plaintiff until November 8, 2005, after the ALJ had already issued his decision (Tr. 274-76). The ALJ's finding of no symptomology involving Plaintiff's left arm was correct based on the record at the time of his decision. Notably, a physical therapy evaluation of Plaintiff's left arm and shoulder in March 2005 showed normal motor strength and range of motion (Tr. 263, 265). That was consistent with the fact that she never complained of ongoing left arm or shoulder pain to any treating or examining medical source. See supra p. 6. After her bilateral carpal tunnel surgeries, she reported doing well in May 2004 (Tr. 203). She had "a little bit of weakness" in her left hand, but it was improving (Tr. 203). Further, she was instructed to follow-up with her treating surgeon if necessary, which she never did (Tr. 203). In July 2004, she again reported that carpal tunnel release surgery had reduced her symptoms (Tr. 253). The examining physician reported no functional restrictions of Plaintiff's left arm or hand (Tr. 253). Clearly, the ALJ's conclusion was supported by substantial evidence in the record at the time of his decision. Furthermore, as discussed below, the evidence subsequently introduced into the record further supports the ALJ's determination.

Dr. Levy diagnosed Erb's Palsy of the right arm, frozen right shoulder, status post bilateral carpal tunnel release and chronic strain of both hands (Tr. 276). He opined that Plaintiff had a 30% partial disability of the left arm at the wrist, a 20 % partial disability of the right arm at the wrist, and an 80% partial disability of the right arm at the shoulder (Tr. 276-77). However,

there is no basis for affording his opinion significant weight. First, Dr. Levy only examined Plaintiff once (Tr. 274-77). The opinion of a physician who examines a claimant once does not generally constitute substantial evidence. See Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998); Metz v. Shalala, 49 F.3d 374, 378 (8th Cir. 1995). Second, Dr. Levy's opinion is unsupported by any other evidence in the record. Notably, Plaintiff's treating physician did not indicate that she had any significant functional restrictions after her carpal tunnel release surgery (Tr. 203). Third, Dr. Levy's opinion is unsupported by his own examination notes. During examination, Plaintiff had full range of motion with no discomfort of any joints in her left arm (Tr. 276). Sensory examination was normal (Tr. 276). More strikingly, both Phalen's maneuver[3] and Tinel's sign[4] were negative (Tr. 276). Further, despite Plaintiff's repeated assertions, Dr. Levy did not indicate that Plaintiff's grip strength was "significantly reduced." This argument appears based on Plaintiff's statements to Dr. Levy, not his objective medical findings (Tr. 274). Plaintiff's characterization of Dr. Levy's findings also appears to be incorrect. Plaintiff's left hand grip strength ratings of 25 to 30 kilograms are in the slightly below average to average range[5]. There is simply no support in Dr. Levy's examination findings for his opinion that Plaintiff had a 30% disability of her left arm at the wrist (Tr. 276). Finally,

---

[3] Phalen's maneuver is a test for carpal tunnel syndrome by reducing the size of the carpal tunnel by fully flexing or extending the wrist or compressing the carpal tunnel with an inflatable cuff. See Dorland's at 985.

[4] Tinel's sign is a test for carpal tunnel syndrome which produces "a tingling sensation in the distal end of a limb when percussion is made over the site of the a divided nerve. It indicates a partial lesion or the beginning of regeneration of the nerve." Dorland's at 1527.

[5] The average grip strength for a woman ranges from 26 to 30 kg. See Fitness Testing: Handgrip Strength Test, http://www.topendsports.com/testing/tests/handgrip.htm; Understanding Your Results: Grip Strength, http://tlhs.tufts.edu/assessment_day/results/grip_strength.html.

the Appeals Council considered Dr. Levy's opinion, and found that it would not change the outcome of the ALJ's decision, presumably for the multiple reasons outlined above (Tr. 5-7). In these circumstances, remand for further consideration is inappropriate. See Flynn v. Chater, 107 F.3d 617, 621 (8th Cir. 1997) (citing Riley v. Shalala, 18 F.3d 619, 622 (8th Cir. 1994).

Plaintiff argues that the ALJ's residual functional capacity (RFC) determination was not based upon the medical evidence because he did not explain the basis of his determination. See Pl.'s Br. at 19-22. The ALJ clearly discussed the medical evidence as well as Plaintiff's credibility prior to determining Plaintiff's RFC (Tr. 15-19). The ALJ specifically indicated that Plaintiff's right arm impairment restricted her to at most light work (Tr. 15). He also properly found a lack of evidence to support a finding of significant functional restriction of her left arm (Tr. 15, 18). As is almost always true, the ALJ could have discussed more of the evidence that led to his RFC determination. However, an ALJ should not be required to mention in writing every piece of testimony and evidence submitted, when the record shows, as it does here, that he has given thorough consideration to Plaintiff's claim. The Seventh Circuit has stated that "[a] more extensive requirement sacrifices on the altar of perfectionism the claims of other people stuck in the queue." See Stephens v. Heckler, 766 F.2d 284, 288 (7th Cir. 1985).

Again, Plaintiff claims error because the ALJ's RFC ignored Dr. Levy's report and failed to base the RFC determination on all of the evidence. See Pl.'s Br. at 20. As stated above, Dr. Levy's opinion could not be considered by the ALJ because it was not in the record at the time of his decision. Further, rather than being ignored, the Appeals Council obviously considered Dr. Levy's opinion (Tr. 5). However, it found that there was no basis in Dr. Levy's opinion for changing the decision of the ALJ. As discussed above, there were a variety of

9

reasons that Dr. Levy's opinion could not be considered substantial evidence that would require a change in the ALJ's RFC determination. See supra pp. 7-8. The unsupported opinion of a non-treating physician offered after the relevant period which is inconsistent with the evidence as a whole is entitled to very little weight. See 20 C.F.R. §§ 404.1527(d), 416.927(d). Thus, Dr. Levy's opinion cannot be a basis for finding that the ALJ's RFC determination is not supported by substantial evidence.

Plaintiff argues that the ALJ and Appeals Council erred in failing to explain how they resolved the contradictions in the case record. See Pl.'s Br. at 20. In fact, a review of the record reveals that it is remarkably consistent. The record demonstrated that Plaintiff had serious functional restrictions of her right arm and shoulder. In response the ALJ precluded all work activity involving Plaintiff's right arm due to Erb's palsy (Tr. 18). On the other hand, the record again was remarkably consistent in showing that Plaintiff had no long-term functional restrictions of her left arm. After carpal tunnel release surgery, she did not return to her treating physician after the normal post-surgical check ups. See supra p. 7. She never complained of significant left arm, hand, or shoulder pain to any treating or examining source during the relevant period. Further, objective testing performed in March 2005 revealed no motor deficits or restricted range of motion. See supra p. 7. Finally, even Dr. Levy's examination failed to reveal abnormal left arm strength or motion. See supra p. 8. Thus, the record was entirely consistent with the ALJ's RFC which included no limitations of Plaintiff's left arm or wrist. In contrast, Dr. Levy's opinion that Plaintiff had significantly functional limitations of her left arm was inconsistent with all of the other evidence in the record.

Conclusion

Plaintiff had a fair hearing and full administrative consideration in accordance with applicable statutes and regulations. Substantial evidence on the record as a whole supports the Commissioner's decision. Accordingly, the Commissioner's decision should be affirmed.

                              Respectfully submitted,

                              CATHERINE L. HANAWAY
                              UNITED STATES ATTORNEY

                                s/ Jane Rund
                               JANE RUND, Bar #47298
                               Assistant United States Attorney
                               111 S. 10th Street, Suite 20.333
                               St. Louis, Missouri 63102
                               (314) 539-2200
                               (314) 539-2777 FAX

                               OF COUNSEL
                               Frank V. Smith III
                               Chief Counsel, Region VII
                               Social Security Administration

                               By
                                Sean N. Stewart, Ks. S. Ct. #20018
                                Assistant Regional Counsel

CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2006, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following: Andrew R. Tarry, Attorney for Plaintiff, 1020 N. Kingshighway, Suite H, Cape Girardeau, Missouri 63701.

                               s/ Jane Rund
                               JANE RUND #47298
                               Assistant United States Attorney